## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VLSI TECHNOLOGY, LLC,** | ) |
| 150 S. Wacker Drive, Suite 2400 | ) |
| Chicago, IL 60606 | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **UNITED STATES PATENT AND** | ) |
| **TRADEMARK OFFICE,** | ) |
| 600 Dulaney St., | ) |
| Alexandria, VA 22313-1450 | ) |
| | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **COMMERCE,** | ) |
| Office of General Counsel | ) |
| 1401 Constitution Ave NW | ) |
| Washington, DC 20230 | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## <u>COMPLAINT</u>

1.      Plaintiff VLSI TECHNOLOGY, LLC brings this suit to force Defendants UNITED STATES PATENT AND TRADEMARK OFFICE ("USPTO") and UNITED STATES DEPARTMENT OF COMMERCE ("COMMERCE") to produce records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") regarding the handling of USPTO proceedings involving recipients of government funds under the Creating Helpful Incentives to Produce Semiconductors and Science Act of 2022 ("CHIPS Act"), Pub. L. No. 117-167, 136 Stat. 1366 (Aug. 9, 2022).   USPTO located responsive records and sent them to COMMERCE for consultation, but the response deadline has passed and no records have been produced nor any determination issued because COMMERCE still has not completed their review despite estimating

completion by June 22, 2024.  COMMERCE claimed that Plaintiff's request to COMMERCE was "too broad in the number of files [COMERCE] would have to search," and asked Plaintiff to consider limiting the scope of its request.  Plaintiff responded by narrowing and clarifying its request, but COMMERCE has not responded to this clarified request for over five months.

## PARTIES

2.      Plaintiff VLSI TECHNOLOGY, LLC is the FOIA requester in this case.

3.      Defendant UNITED STATES PATENT AND TRADEMARK OFFICE is a federal agency and is subject to the Freedom of Information Act, 5 U.S.C. § 552.

4.      Defendant UNITED STATES DEPARTMENT OF COMMERCE is a federal agency and is subject to the Freedom of Information Act, 5 U.S.C. § 552.  COMMERCE is also the parent agency of USPTO.

## JURISDICTION AND VENUE

5.      This case is brought under 5 U.S.C. § 552(a)(4)(B) and presents a federal question conferring jurisdiction on this Court.  *See* 28 U.S.C. § 1331.

6.      Venue is proper under 5 U.S.C. § 552(a)(4)(B).

## BACKGROUND

### Intel Litigation and Unsuccessful IPR Petitions

7.      Plaintiff is the assignee and owns all right, title, and interest to U.S. Patent Nos. 7,725,759 ("the '759 Patent") and 7,523,373 ("the '373 Patent").

8.      Plaintiff served Intel Corporation ("Intel") with a complaint for infringement of the '373 and '759 Patents on April 11, 2019.

9.      Intel subsequently filed three petitions for *inter partes* review ("IPR") with the USPTO challenging the patentability of Plaintiff's asserted claims in the '373 and '759 Patents. An IPR is an adversarial trial proceeding conducted by the USPTO to review the patentability of

patent claims.  The USPTO has discretion whether to institute an IPR proceeding in response to a petition.

10.     The USPTO, through the Patent Trial and Appeal Board ("PTAB"), denied all three petitions filed by Intel.  *See Intel Corp. v. VLSI Tech LLC*, IPR2020-00158, Paper 16 (P.T.A.B. May 20, 2020); *Intel Corp. v. VLSI Tech LLC*, IPR2020-00106, Paper 17 (P.T.A.B. May 5, 2020); *Intel Corp. v. VLSI Tech LLC*, IPR2020-00498, Paper 16 (P.T.A.B. Aug. 19, 2020).

11.     As of April 12, 2020, Intel was barred by operation of law from filing additional IPR petitions challenging the patentability of the '373 and '759 Patents pursuant to 35 U.S.C. § 315(b).

12.     Following a favorable jury verdict on March 2, 2021, which awarded Plaintiff $1.5 billion for Intel's infringement of the '373 Patent and $675 million for Intel's infringement of the '759 Patent, the district court entered judgment against Intel on its counterclaims of invalidity of the asserted claims of the '373 and '759 Patents.  *See VLSI Tech. LLC v. Intel Corp.*, No. 6:21-CV-057-ADA, ECF No. 701 (Final Judgment), at 1-2 (W.D. Tex. May 10, 2022).

13.     Intel appealed the judgment but did not challenge the district court's rejection of its invalidity claims.  The U.S. Court of Appeals for the Federal Circuit subsequently affirmed the judgment of infringement of the '373 Patent and reversed the judgment of infringement of the '759 Patent; it also vacated '373 Patent damages award and remanded for a new trial on damages.  *See VLSI Tech. LLC v. Intel Corp.*, No. 2022-1096 (Fed. Cir. Dec. 4, 2023).

**Opensky and PQA IPR Petitions**

14.     Following that verdict, OpenSky Industries, LLC ("OpenSky") formed as a Nevada LLC on April 23, 2021, and Patent Quality Assurance, LLC ("PQA") formed as a South Dakota LLC on June 14, 2021.  *See* IPR2021-01064, Ex. 2006 (PTAB); IPR2021-01229, Ex. 2009 (PTAB).

15.     OpenSky and PQA have no business activities, make no products, and have never been accused of infringement.

16.     Shortly after their formation, OpenSky Industries, LLC ("OpenSky") and Patent Quality Assurance, LLC ("PQA") filed IPR petitions challenging the patentability of claims of Plaintiff's '373 and '759 Patents in June and July of 2021.

17.     The PTAB granted two of these petitions, over Plaintiff's objections, leading to the institution of the requested reviews in IPR2021-01064 of the '759 patent (the "OpenSky IPR") and IPR2021-01229 of the '373 patent (the "PQA IPR").

**Intel and USPTO Director Vidal**

18.     Under Secretary of Commerce for Intellectual Property and Director of the USPTO Kathi Vidal ("Director Vidal") assumed leadership of the USPTO on April 13, 2022. *See* USPTO, *USPTO Welcomes New Director Kathi Vidal* (Apr. 13, 2022), https://www.uspto.gov/about-us/news-updates/uspto-welcomes-new-director-kathi-vidal.

19.     On information and belief, Director Vidal previously represented Intel as a client during her private practice career. *See* Black Brittain, *Biden Nominates Winston & Strawn Partner Kathi Vidal to Lead USPTO*, Reuters (Oct. 26, 2021) ("Vidal has extensive experience as a patent litigator, and has represented companies including . . . Intel Corp . . . over her career."), https://www.reuters.com/legal/transactional/biden-nominates-winston-strawn-partner-kathi-vidal-lead-uspto-2021-10-26/.

20.     Intel Corporation ("Intel") is a recipient of federal government funds in connection with the CHIPS Act. *See, e.g.*, Intel, *Intel and Biden Admin Announce up to $8.5 Billion in Direct Funding Under the CHIPS Act* (Mar. 20, 2024), https://www.intel.com/content/www/us/en/newsroom/news/us-chips-act-intel-direct-funding.html#gs.am3y18.

21.    Intel has engaged and continues to engage in a massive government lobbying campaign to COMMERCE and other governmental entities to influence discussions about, among other things, issues surrounding the CHIPS Act.  *See, e.g.*, Karl Evers-Hillstrom, *Chipmakers Doubled Lobbying Spending in CHIPS Act Push*, The Hill (Oct. 21, 2022), https://thehill.com/lobbying/3698406-chipmakers-doubled-lobbying-spending-in-chips-act-push; Ana Swanson & Don Clark, *Chip Makers Turn Cutthroat in Fight for Share of Federal Money*, NY Times (Feb. 23, 2023),   https://www.nytimes.com/2023/02/23/business/economy/chip-makers-fight-federal-money.html.

22.    Intel has cultivated a close relationship with the Biden Administration. *See, e.g.*, Maggie Overfelt, *Why Intel CEO Pat Gelsinger Was a Guest at President Biden's State of the Union Address*, CNBC (Mar. 2, 2022) ("Intel, and Gelsinger specifically, have one powerful friend: President Joe Biden.  In his State of the Union Address on Tuesday evening, Biden called out Gelsinger, who was in attendance, and Intel's $20 billion investment . . . ."); David E. Sanger & Ana Swanson, *Biden Looks to Intel's U.S. Investment Agenda to Buoy His China Agenda*, NY Times (Jan. 21, 2022) ("[I]n addition to providing positive headlines for a beleaguered White House, Intel's plans may help build momentum for a key element of Mr. Biden's agenda . . . ."); The White House, *FACT SHEET: Biden-Harris Administration Bringing Semiconductor Manufacturing Back to America* (Jan. 20, 2022) ("The Biden-Harris Administration has been working around the clock with . . . the private sector . . . . Today, Intel will announce a new $20 billion factory outside Columbus, Ohio."); The Associated Press, *Biden Meets with Intel's CEO and Other Execs in Push to Revive Domestic Chip Industry*, The Oregonian (Apr. 12, 2021).

23.    At an April 27, 2023 oversight hearing before the House Judiciary Subcommittee on Courts, Intellectual Property, and the Internet, Director Vidal testified under oath that, when she conducts Director Reviews in IPRs, she limits her involvement to the public record and

"hold[s] [her]self to the same standard of any Article III judge," she "do[es] not have any ex parte communications," "do[es] not discuss the cases with parties," "members of congress," "anybody within the administration," or "anyone else."

24.     On information and belief, Director Vidal participated in multiple meetings with COMMERCE in which "the OpenSky case" was identified as an agenda item.  *See, e.g.*, Gene Quinn, *The Secrets Behind an Alleged Patent Quality Assurance-Intel Connection*, IPWatchdog (Feb. 15, 2023), https://ipwatchdog.com/2023/02/15/secrets-behind-alleged-patent-quality-assurance-intel-connection/id=156753/.

25.     On information and belief, in one or more of those meetings, Director Vidal addressed the "allegations of abusive filings of inter partes review petitions" that arose in the OpenSky case.

26.     Director Vidal personally intervened in the OpenSky and PQA IPRs to perform Director Reviews of unprecedented scope, and participated in multiple decisions involving Intel, OpenSky, PQA, and the allegations of abusive filings that arose in both cases.

**Opensky IPR Proceedings**

27.     The OpenSky IPR petition against the '759 Patent copied extensively from Intel's prior petitions against that patent.  *See* IPR2021-01064, Ex. 2024 & Paper 102, at 7.

28.     Had OpenSky listed Intel as a real party in interest, the PTAB would not have had the authority to grant OpenSky's petition as a matter of law.  *See* 35 U.S.C. § 315(b).

29.     On December 23, 2021, the PTAB granted OpenSky's petition over Plaintiff's objections, IPR2021-01064, Paper 17.

30.     After the PTAB instituted OpenSky's IPR, Intel filed its own IPR petition (IPR2022-00366), seeking to join the instituted proceeding (IPR2021-01064) pursuant to 35 U.S.C. § 315(c).

31.     On June 7, 2022, Director Vidal *sua sponte* ordered a "Director review" of the PTAB's institution decision. *See* IPR2021-1064, Paper 41.

32.     On June 8, 2022, the PTAB, acting on behalf of Director Vidal, permitted Intel to join the OpenSky IPR over Plaintiff's objections.  *See* IPR2021-01064, Paper 43; 35 U.S.C. § 315(c).

33.     Following discovery and briefing, Director Vidal found that "[v]iewed as a whole, OpenSky's conduct has been an abuse of the IPR process, the patent system, and the Office." IPR2021-01064, Paper 102, at 43.  She also found that OpenSky's conduct "does not comport with the purpose and legitimate goals of the AIA and is an abuse of process," and that "[d]espite being given the opportunity, OpenSky failed to offer a verifiable, legitimate basis for filing its IPR Petition, which was filed only after a district court awarded large monetary damages keyed to the subject '759 patent."  *Id.* at 43-44.

34.     Director Vidal ordered discovery from the parties to the OpenSky IPR, including information about any connections between Intel and OpenSky.  *See* IPR2021-01064, Paper 47, at 8 ("When was OpenSky formed? For what purpose? What is the business of OpenSky? Who are members of OpenSky? Which other persons or entities have an interest in OpenSky or any of its activities including this proceeding? Explain. . . . What is the relationship between OpenSky and each of the other parties?").

35.     OpenSky failed to comply with Director Vidal's discovery order.  *See, e.g.*, IPR2021-01064, Paper 102, at 37 (noting that "the lack of evidence of OpenSky's business is due to OpenSky's discovery misconduct").

36.     Director Vidal found that OpenSky expressly refused to comply with the mandated discovery and that OpenSky's "objections have no merit."  IPR2021-01064, Paper 102, at 16, 21.

37.     For example, Director Vidal found that "OpenSky did not provide any required evidence that would allow me, VLSI, or Intel to consider OpenSky's position."  IPR2021-01064, Paper 102, at 22.

38.     And in response to Director Vidal's interrogatory asking "[w]hat is the basis for concluding that there are no other real parties in interest, beyond OpenSky," OpenSky asserted that it "acted entirely on its own" but "provide[d] no evidence to support its allegation."  IPR2021-01064, Paper 102, at 24.  As Director Vidal correctly found, "because OpenSky does not provide evidence of its funding, it is not possible to ascertain whether or not OpenSky merely acts as a shell for other entities [such as Intel] seeking to challenge the '759 patent."  *Id.* at 24-25.

39.     Director Vidal stated that she would apply "adverse inferences" against OpenSky. *See* IPR2021-01064, Paper 102, at 27 ("[T]he proper sanction is to hold disputed facts as established against OpenSky.").

40.     Despite finding that OpenSky failed to comply with her discovery order, Director Vidal did not draw an adverse inference that Intel had any role in the initial petition.

41.     Director Vidal found that OpenSky's "behavior warrants sanctions to the fullest extent of [her] power," that such sanctions "are necessary to deter such conduct by OpenSky or others in the future."  IPR2021-01064, Paper 102, at 3-4.

42.     Director Vidal also acknowledged that "terminat[ing] the proceeding . . . could be the appropriate remedy here or in future proceedings reflecting an abuse of process."  IPR2021-01064, Paper 102, at 47.

43.     Director Vidal nonetheless declined to terminate the OpenSky IPR based on her application of a "compelling merits" standard never previously applied in the abuse of process context.  *See* IPR2021-01064, Paper 121, at 5-6.

44.     Additionally, Director Vidal not only permitted Intel to remain in the proceedings but also elevated Intel to the role of lead petitioner—i.e., the party leading and controlling the challenge to VLSI's '373 Patent.  IPR2021-01064, Paper 102, at 51.

45.     Intel and its counsel participated extensively in the OpenSky IPR.  *See, e.g.*, IPR2021-01064, Paper 115 (addressing the alleged "compelling merits" of the OpenSky IPR and arguing that "the case [should be] allowed to proceed to a final written decision on the merits").

46.     Director Vidal "recognize[d] that some may believe that [she was] allowing Intel to benefit from OpenSky's wrongdoing by not immediately terminating the proceeding," for example, and then stated that "there is no evidence that Intel was complicit in OpenSky's abuse." IPR2021-01064, Paper 102, at 48.  But in the same decision, Director Vidal found that "the lack of evidence of OpenSky's business is due to OpenSky's discovery misconduct."  *Id.* at 37.

47.     Director Vidal dismissed OpenSky from the IPR proceeding as punishment for its "abuse of the IPR process."  *See* IPR2021-01064, Paper 121, at 2-3.

48.     Director Vidal subsequently reversed course and restored OpenSky as a petitioner. *See* IPR2021-01064, Paper 127, at 15.

49.     On May 12, 2023, the PTAB issued a final written decision in the OpenSky IPR, finding all challenged claims of the '759 Patent unpatentable. IPR2021-01064, Paper 135.

50.     Plaintiff is appealing the PTAB's final written decision and Director Vidal's refusal to terminate the IPR. Plaintiff's appeal to the U.S. Court of Appeals for the Federal Circuit is pending as *VLSI Technology LLC v. OpenSky Industries, LLC*, No. 23-2158 (Fed. Cir.).

**PQA IPR Proceedings**

51.     The PQA IPR petition copied extensively from Intel's prior petition against the '373 Patent.  *See* IPR2021-01229, Ex. 2016 & Paper 102, at 10.

52.     Had PQA listed Intel as a real party in interest, the PTAB would not have had the authority to grant PQA's petition as a matter of law.  *See* 35 U.S.C. § 315(b).

53.     On January 26, 2022, the PTAB granted PQA's petition over Plaintiff's objections and instituted the PQA IPR, IPR2021-01229, Paper 10.

54.     After the PTAB instituted the PQA IPR, Intel filed its own IPR petition (IPR2022-00479), seeking to join the instituted proceeding pursuant to 35 U.S.C. § 315(c).

55.     On June 6, 2022, the PTAB, acting on behalf of Director Vidal, permitted Intel to join the PQA IPR over Plaintiff's objections.  *See* IPR2021-01229, Paper 30.

56.     On June 7, 2022, Director Vidal *sua sponte* ordered a Director review of the PTAB's institution decision.  *See* IPR2021-01229, Paper 31.

57.     Following discovery and briefing, Director Vidal found that "[v]iewed as a whole, PQA's conduct has been an abuse of the IPR process, the patent system, and the Office."  IPR2021-01229, Paper 102, at 54.  She also found that PQA's conduct "do[es] not comport with the purpose and legitimate goals of the AIA and are abuses of process," and that "[d]espite being given the opportunity, PQA failed to offer a verifiable, legitimate basis for filing its IPR Petition, which was filed only after a district court awarded large monetary damages keyed to the subject '373 patent." *Id.* at 54-55.

58.     Director Vidal ordered discovery from the parties to the PQA IPR, including information about any connections between Intel and PQA.  *See* IPR2021-01229, Paper 35, at 8 ("When was PQA formed? For what purpose? What is the business of PQA? Who are members of PQA? Which other persons or entities have an interest in PQA or any of its activities including this proceeding? Explain. . . .  What is the relationship between PQA and each of the other parties?"); *see also* IPR2021-01229, Paper 131, at 22 (noting the purpose of Director Vidal's

discovery included "investigat[ing] whether [PQA] has an unnamed real party in interest or is otherwise colluding with a time barred party seeking to come in through joinder").

59.    PQA failed to comply with Director Vidal's discovery order. *See, e.g.*, IPR2021-01229, Paper 102, at 18 ("PQA did not comply with the Mandated Discovery as ordered," and instead "produced a minimal number of documents to the other parties and provided wholly inadequate answers to [Director Vidal's] interrogatories."); *see also id.* at 38 ("I find that PQA was not only non-responsive to my interrogatories but that PQA was evasive in its responses and engaged in troublesome conduct."); *id.* at 31 (finding "PQA's responses deficient and misleading"); *id.* at 37 ("PQA has made misleading statements and affirmatively attempted to withhold facts that, taken alone or with other facts, might establish that PQA abused the IPR process."); *id* at 50 ("PQA flouted Mandated Discovery refusing to turn over or log internal communications that would have shed light on the 'purpose' for which PQA was formed.").

60.    For example, in response to Director Vidal's interrogatory regarding PQA's membership and purpose, Director Vidal found PQA's answer "not responsive" because it "only makes an assertion as to who its members are not; it does not identify the members of PQA." IPR2021-01229, Paper 102, at 28.  "In addition, PQA does not answer the interrogatory seeking the purpose for which PQA was formed, nor does PQA provide any required supporting evidence that would allow [Director Vidal], VLSI, or Intel to verify that PQA's business interest is limited to ensuring patent quality." *Id.*

61.    And in response to Director Vidal's interrogatory asking "[w]hat is the basis for concluding that there are no other real parties in interest, beyond PQA," PQA provided a response that Direct Vidal found "not responsive" and one that "does not provide sufficient evidence to allow [her] to evaluate PQA's answer."  IPR2021-01229, Paper 102, at 34.

62.     PQA also maintained frivolous objections to Director Vidal's discovery order. Director Vidal found that PQA's "objections have no merit," and that "PQA does not provide any satisfactory reason for its refusal to comply with the Mandated Discovery." IPR2021-01229, Paper 131, at 17, 28.

63.     Director Vidal stated that she would apply "adverse inferences" against PQA. *See* IPR2021-01229, Paper 102, at 38 ("I determine that the proper sanction is to hold disputed facts as established against PQA").

64.     Director Vidal also found that "the lack of evidence of PQA's business purpose and membership is due to PQA's discovery misconduct." IPR2021-01229, Paper 102, at 48.

65.     Despite finding that PQA failed to comply with her discovery order, and despite noting that a purpose of that discovery included "investigat[ing] whether [PQA] has an unnamed real party in interest or is otherwise colluding with a time barred party seeking to come in through joinder," Director Vidal did not draw an adverse inference that Intel had any role in PQA's petition. IPR2011-01229, Paper 131, at 22.

66.     Director Vidal also stated that she ordered discovery to determine whether to terminate the IPR proceedings. *E.g.*, IPR2021-01229, Paper 131, at 20 ("Considering the severity of this allegation, the *point* of the discovery was to determine whether I should exercise discretion to deny institution.").

67.     Director Vidal nonetheless declined to terminate the PQA IPR based on her application of a "compelling merits" standard never previously applied in the abuse of process context other than the OpenSky IPR discussed above. *See* IPR2021-01229, Paper 102, at 6.

68.     Additionally, Director Vidal not only permitted Intel to remain in the proceedings but also elevated Intel to the role of sole petitioner. IPR2021-01229, Paper 102, at 58.

69.    Intel and its counsel participated extensively in the PQA IPR.  *See, e.g.*, IPR2021-01229, Paper 97 (arguing that Intel should not be terminated based on claim preclusion or res judicata grounds).

70.    Director Vidal dismissed PQA from the IPR proceeding as punishment for its "abuse of the review process."  *See* IPR2021-01229, Paper 102, at 5.

71.    Director Vidal subsequently reversed course and restored PQA as a petitioner.  *See* IPR2021-01229, Paper 108, at 5.

72.    On June 13, 2023, the PTAB issued a final written decision in the PQA IPR, finding all challenged claims of the '373 Patent unpatentable.  IPR2021-01229, Paper 129.

73.    Plaintiff is appealing the PTAB's final written decision and Director Vidal's refusal to terminate the IPR.  Plaintiff's appeal to the U.S. Court of Appeals for the Federal Circuit is pending as *VLSI Technology LLC v. Patent Quality Assurance LLC*, No. 23-2298 (Fed. Cir.).

**The Anonymous Submission**

74.    In February 2023, the Patent Ombuds Office at the USPTO received an "unsolicited anonymous" document ("anonymous submission") described as "a communication to the Chair and Ranking Member of the House Oversight Committee, which appears to have been forwarded by Senate Judiciary committee staffers to the Patent Ombuds Office at the USPTO."  IPR2021-01229, Paper 112, at 2-3.

75.    "[T]he submission was not marked as confidential, and was possessed by multiple members of the House Oversight Committee, multiple additional staffers on the Senate Judiciary Committee, and the Patents Ombuds Office of the USPTO, all without any apparent confidentiality restrictions."  *Id.* at 3.

76.     On information and belief, the anonymous submission was also informally circulated to individuals not affiliated with COMMERCE or the USPTO, including journalists and academics.

77.     According to publicly published information, the anonymous submission "alleges that Intel created a shell company called the [PQA] following losses in court cases against [VLSI], which then appealed to the [PTAB] to overturn VLSI's patents and release Intel from liability." Allum Bokhari, *Anonymous Letter to House Oversight Committee Alleges Intel Cheated in Patent War*, Breitbart (Mar. 1, 2023), https://www.breitbart.com/tech/2023/03/01/anonymous-letter-to-house-oversight-committee-alleges-intel-cheated-in-patent-war/; *see also* Gene Quinn, *The Secrets Behind an Alleged Patent Quality Assurance-Intel Connection*, IPWatchdog (Feb. 15, 2023), https://ipwatchdog.com/2023/02/15/secrets-behind-alleged-patent-quality-assurance-intel-connection/id=156753/ (reporting that "sources have separately told IPWatchdog of the existence of a whistleblower complaint in possession of the House Oversight Committee, which allegedly details a relationship between PQA and Intel").

78.     The USPTO characterized this anonymous submission as an "improper ex parte communication regarding this proceeding," placed the document under seal, and indicated that "[t]he Director will not consider the submission in reaching a decision on Director review," and that "[i]n addition, the Board will not consider the submission." IPR2021-01229, Paper 111, at 2. Director Vidal justified sealing the alleged "improper ex parte communication" as allegedly vindicating "the Office's . . . interest in not further disseminating such communications." IPR2021-01229, Paper 112, at 3.

79.     Director Vidal not only sealed the anonymous submission, but also ordered Plaintiff not to reference its contents. *See* IPR2021-01229, Paper 125, at 6 ("I strongly caution VLSI as it relates to its actions here, i.e., expressly citing to and referring to information in [the anonymous

submission] in its Rehearing Request. It was improper for VLSI to include that information in its publicly available Rehearing Request, thereby disclosing it to the public, the Board, and myself, even after I had indicated that the Board and I had not reviewed and would not consider [the anonymous submission].").

80.    Further, Director Vidal prevented Plaintiff from seeking further discovery into the anonymous submission. On February 23, 2023, Director Vidal denied Plaintiff's request for additional discovery and ordered Plaintiff to submit a new request for discovery that 1) "does not rely on information from the ex parte submission," 2) "explain[s] why it could not have filed this motion sooner had it exercised reasonable diligence [without acknowledging the anonymous submission]," and 3) "come[s] forward with evidence 'tending to show beyond speculation that in fact something useful will be uncovered,' again without reference to the [anonymous submission]." *See* IPR2021-01229, Paper 117, at 3.

81.    That order effectively precluded Plaintiff from seeking such discovery.

82.    When Plaintiff sought reconsideration of Director Vidal's decision to seal the anonymous submission and suggested additional discovery to test the allegations therein, Director Vidal issued an Order to Show Cause and "caution[ed] VLSI that if it repeats similar conduct, I [Director Vidal] will issue another Order to Show Cause as to why VLSI should not be sanctioned and pay compensatory fees to PQA and/or Intel." IPR2021-01229, Paper 125, at 5-6.

83.    Director Vidal threatened sanctions against Plaintiff despite clear evidence that the anonymous submission was already in the public domain, was not marked confidential, and, as the Director conceded, was already the subject of news reports. *See, e.g.*, IPR2021-01229, Paper 125, at 4 (acknowledging an article that "states that the [anonymous submission] 'allegedly details a relationship between PQA and Intel.'"); *see also* IPR2021-01229, Paper 112, at 3; IPR2021-01229, Exhibit 3032, at 1 ("The documents are not marked as confidential, were evidently possessed by

multiple members of the House Oversight Committee, multiple additional staffers on the Senate

Judiciary Committee, and the Ombuds[] for the USPTO, all without any apparent confidentiality

restrictions.  The document makes significant allegations supported by detailed evidence.  VLSI

does not believe the submission should be kept from the public, which has been closely watching

and has a significant interest in these IPRs.").

### NOVEMBER 1, 2024 FOIA REQUEST TO COMMERCE

84.    On November 1, 2023, Plaintiff submitted the following FOIA request to

COMMERCE:

> Please provide any Records constituting or reflecting any
> memoranda, agreement, discussions, directives, or communications
> (individually and collectively, "Records") within the following
> categories:
>
> 1. Memoranda from the last two years, communicated between the
> Department of Commerce and the USPTO, relating to patent
> litigation involving actual or potential private sector recipients of
> government funds in connection with the CHIPS and Science Act of
> 2022 ("CHIPS Recipients").
>
> 2. Records from the last two years, communicated between the
> Department of Commerce and the USPTO, relating to USPTO
> proceedings or policies involving CHIPS Recipients.
>
> 3. Records related to communications between the USPTO and the
> Department of Commerce regarding CHIPS Recipients, including
> without limitation any Records regarding the impact of patents,
> patent litigation, USPTO proceedings, or USPTO policies on such
> CHIPS Recipients, as well as any suggested or actual USPTO
> policies or procedures specific to such CHIPS Recipients.
>
> 4. Records reflecting formal or informal USPTO policies or
> procedures specifically related to CHIPS Recipients.
>
> 5. Records related to considering whether an entity is a CHIPS
> Recipient when the USPTO makes decisions such as: (a) instituting
> post-grant proceedings, such as inter partes reviews, post grant
> reviews, or ex parte reexaminations of patent claims CHIPS
> Recipients have been accused of infringing; (b) determining that
> patent claims CHIPS Recipients have been accused of infringing are
> not patentable; ( c) declining to issue patent claims that CHIPS

Recipients may infringe or be accused of infringing; (d) declining to institute post grant proceedings, such as inter partes reviews, post grant reviews, or ex parte reexaminations of patents owned by CHIPS Recipients; or ( e) issuing patent claims to CHIPS Recipients.

85.    A true and correct copy of the original FOIA request is attached as Exhibit 1.

86.    On November 3, 2023, COMMERCE acknowledged receipt of the request.

87.    A true and correct copy of the correspondence is attached as Exhibit 2.

88.    On January 31, 2024, Plaintiff inquired about the status of the request and sought an estimated date of completion.

89.    On February 1, 2024, COMMERCE asked that Plaintiff provide clarification for the request and attached a letter dated November 20, 2023.

90.    True and correct copies of the correspondence and clarification letter are included in Exhibit 3.

91.    In its letter, COMMERCE stated that it "would have difficulty processing [Plaintiff's] request … as it is written," that Plaintiff's request "is much too broad in the number of files [COMERCE] would have to search," and that "[s]uch a search is simply unreasonable, impractical, and not possible within a reasonable timeframe." *Id.* COMMERCE additionally "ask[ed] that [Plaintff] consider limiting the scope of [its] request to limit [COMMERCE's] searches to a particular office or a bureau within the Department of Commerce where records pertaining to [Plaintiff] might be located, or even a time-frame or subject matter for the search." *Id.*

92.    On February 22, 2024, Plaintiff revised its FOIA request as follows:

1. Particular Persons/Offices to Search: We agree to narrow our definition of "Department of Commerce" from "any and all employees and representatives" to solely individuals within the "Office of the Secretary," including but not limited to Secretary of Commerce Gina M. Raimondo; the "Office of the General Counsel," including but not limited to General Counsel Leslie B.

Kiernan; and the "CHIPS for America" Leadership Team
(https://www.commerce.gov/news/press-releases/2022/09/biden-
harris-administration-announceschips-america-leadership),
including but not limited to Donna Dubinsky, Senior Counselor to
the Secretary for CHIPS Implementation.

2. Narrowed Time Frame: We agree to limit our request to Records
created from September 1, 2022 to present.

3. Clarified Subject Matter: We clarify the definition of "CHIPS
Recipients" to include "Intel Corporation" specifically, as well as
generic references to actual or potential private-sector recipients of
government funds in connection with the CHIPS and Science Act of
2022. In an effort to simplify your search, we also agree to
consolidate our initial five categories of records to the following
three categories:

    a. Records communicated between the Department of
    Commerce and the USPTO regarding CHIPS Recipients.

    b. Records related to communications between the USPTO and
    the Department of Commerce regarding CHIPS Recipients,
    including without limitation any Records regarding the impact
    of patents, patent litigation, USPTO proceedings, or USPTO
    policies on CHIPS Recipients.

    c. Records related to communications between the USPTO and
    the Department of Commerce regarding any suggested or actual
    USPTO policies or procedures specific to CHIPS Recipients.

93.    A true and correct copy of the correspondence is attached as Exhibit 4.

94.    On February 28, 2024, COMMERCE acknowledged receipt of the clarified request.

*Id*.

95.    On April 30, 2024, Plaintiff requested a status update from COMMERCE and "a
date by which we can expect the processing of our request will be completed." *Id.*

96.    As of the date of this filing, COMMERCE has not responded to Plaintiff's April
30, 2024 correspondence.

97.    As of the date of this filing, COMMERCE has not issued a determination on
Plaintiff's request.

98.     As of the date of this filing, COMMERCE has failed to make responsive records promptly available to Plaintiff as the statute requires.

**NOVEMBER 1, 2023 FOIA REQUEST TO USPTO**

99.     On November 1, 2023, Plaintiff submitted the following FOIA request to USPTO:

Please provide any Records constituting or reflecting any Memoranda, agreement, discussions, directives, or communications (individually and collectively, "Records") within the following categories:

1. Memoranda from the last two years, communicated between the Department of Commerce and the USPTO, relating to patent litigation involving actual or potential private-sector recipients of government funds in connection with the CHIPS and Science Act of 2022 ("CHIPS Recipients").

2. Records from the last two years, communicated between the Department of Commerce and the USPTO, relating to USPTO proceedings or policies involving CHIPS Recipients.

3. Records related to communications between the USPTO and the Department of Commerce regarding CHIPS Recipients, including without limitation any Records regarding the impact of patents, patent litigation, USPTO proceedings, or USPTO policies on such CHIPS Recipients, as well as any suggested or actual USPTO policies or procedures specific to such CHIPS Recipients.

4. Records reflecting formal or informal USPTO policies or procedures specifically related to CHIPS Recipients.

5. Records related to considering whether an entity is a CHIPS Recipient when making decisions such as: (a) instituting post-grant proceedings, such as inter partes reviews, post grant reviews, or ex parte reexaminations of patent claims CHIPS Recipients have been accused of infringing; (b) determining that patent claims CHIPS Recipients have been accused of infringing are not patentable; (c) declining to issue patent claims that CHIPS Recipients may infringe or be accused of infringing; (d) declining to institute post-grant proceedings, such as inter partes reviews, post grant reviews, or ex parte reexaminations of patents owned by CHIPS Recipients; or (e) issuing patent claims to CHIPS Recipients.

100.    A true and correct copy of the FOIA request is attached as Exhibit 5.

101.    On January 31, 2024, Plaintiff requested a status update from USPTO.

- 19 -

102.    A true and correct copy of the correspondence is attached as Exhibit 6.

103.    On February 1, 2024, USPTO responded and stated that a final response had been sent on January 10, 2024. *Id.*

104.    USPTO also attached a letter dated January 10, 2024, to the February 1, 2024 correspondence. *Id.*

105.    A true and correct copy of the letter is included in Exhibit 6.

106.    USPTO stated that it had "identified no records responsive to your request," because "USPTO and individual document custodians typically are not aware of whether given entities are actual or potential private sector recipient[s] of government funds under the CHIPS and Science Act of 2022." *Id.*

107.    USPTO suggested that Plaintiff "submit a separate FOIA request that specifically identifies the private sector entities of interest." *Id.*

## FEBRUARY 22, 2024 FOIA REQUEST TO USPTO

108.    On February 22, 2024, per USPTO's suggestion in response to Plaintiff's November 1, 2023 request, Plaintiff submitted the following FOIA request to USPTO:

> Please provide any Records constituting or reflecting any memoranda, agreement, discussions, directives, or communications (individually and collectively, "Records") within the following categories:
>
> 1. Memoranda from September 1, 2022 to present, communicated between the Department of Commerce and the USPTO, relating to Intel Corporation, or generically referencing actual or potential private-sector recipients of government funds in connection with the CHIPS and Science Act of 2022 ("CHIPS Recipients").
>
> 2. Records from September 1, 2022 to present communicated between the Department of Commerce and the USPTO, relating to USPTO proceedings or policies involving Intel Corporation or other CHIPS Recipients.
>
> 3. Records related to communications between the USPTO and the Department of Commerce regarding Intel Corporation or other

CHIPS Recipients, including without limitation any Records regarding the impact of patents, patent litigation, USPTO proceedings, or USPTO policies on such CHIPS Recipients, as well as any suggested or actual USPTO policies or procedures specific to such CHIPS Recipients.

4. Records reflecting formal or informal USPTO policies or procedures specifically related to Intel Corporation or other CHIPS Recipients.

5. Records related to considering whether an entity is Intel Corporation or another CHIPS Recipient when making decisions such as: (a) instituting post-grant proceedings, such as inter partes reviews, post grant reviews, or ex parte reexaminations of patent claims CHIPS Recipients have been accused of infringing; (b) determining that patent claims CHIPS Recipients have been accused of infringing are not patentable; ( c) declining to issue patent claims that CHIPS Recipients may infringe or be accused of infringing; ( d) declining to institute post-grant proceedings, such as inter partes reviews, post grant reviews, or ex parte reexaminations of patents owned by CHIPS Recipients; or (e) issuing patent claims to CHIPS Recipients.

109.    A true and correct copy of the FOIA request is attached as Exhibit 7.

110.    On April 30, 2024, after receiving no determination within the statutory deadline, Plaintiff followed up with USPTO seeking an estimated date of completion for the request.

111.    A true and correct copy of the correspondence is attached as Exhibit 8.

112.    On May 1, 2024, USPTO stated that it had completed its search and review of the records and indicated that the records needed to be sent out to COMMERCE and the National Institutes for Science and Technology for consultation.  *Id*.

113.    On May 17, 2024, the parties conferred via a phone call regarding the timeline for production of records.

114.    On May 17, 2024, Plaintiff followed up with USPTO seeking a contact at COMMERCE regarding the request and further information about an estimated date of completion.

115.   On May 23, 2024, USPTO stated that it had received correspondence from COMMERCE's Deputy Director Nick Cormier estimating an additional thirty days to review the records.

116.   A true and correct copy of the correspondence is attached as Exhibit 9.

117.   Plaintiff filed a separate FOIA request to COMMERCE for similar records in November 2023 and, as of the date of this filing, has not received any records or a written denial in response to that request.  Ex 1.

118.   As of the date of this filing, USPTO has not issued a determination on Plaintiff's request.

119.   As of the date of this filing, USPTO has failed to make responsive records promptly available to Plaintiff as the statute requires.

### COUNT I – COMMERCE'S FOIA VIOLATION
### NOVEMBER 1, 2023 FOIA REQUEST

120.   The above paragraphs are incorporated by reference.

121.   Plaintiff's FOIA request seeks the disclosure of agency records and was properly made.

122.   Defendant COMMERCE is a federal agency subject to FOIA.

123.   Included within the scope of the request are one or more records or portions of records that are not exempt under FOIA.

124.   Defendant COMMERCE has failed to conduct a reasonable search for records responsive to the request.

125.   Defendant COMMERCE has failed to issue a determination within the statutory deadline.

126.   Defendant COMMERCE has failed to promptly produce all non-exempt records responsive to the request.

## COUNT II – USPTO'S FOIA VIOLATION
## FEBRUARY 22, 2024 FOIA REQUEST

127.    The above paragraphs are incorporated by reference.

128.    Plaintiff's FOIA request seeks the disclosure of agency records and was properly made.

129.    Defendant USPTO is a federal agency subject to FOIA.

130.    Included within the scope of the request are one or more records or portions of records that are not exempt under FOIA.

131.    Defendant USPTO has failed to conduct a reasonable search for records responsive to the request.

132.    Defendant USPTO has failed to issue a determination within the statutory deadline.

133.    Defendant USPTO has failed to promptly produce all non-exempt records responsive to the request.

**WHEREFORE**, Plaintiff asks the Court to:

i.      declare that Defendants have violated FOIA;

ii.     order Defendants to conduct a reasonable search for records and to produce the requested records promptly;

iii.    enjoin Defendants from withholding non-exempt public records under FOIA;

iv.     award Plaintiff attorneys' fees and costs; and

v.      award such other relief the Court considers appropriate.

Dated: July 31, 2024

RESPECTFULLY SUBMITTED,

*/s/ Matthew V. Topic*

Attorneys for Plaintiff
VLSI TECHNOLOGY, LLC

- 23 -

Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com